FILED
NOV 30 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEN ANDERSON-BEY,
Fed. Reg. No. 01924-016,

USP
POB 1000
Lewisburg, PA 17837

Petitioner-Pro-Se:

v.

TROY WILLIAMSON, WARDEN,
USP-LEWISBURG,

Respondent:

CASE NUMBER 1:06CV02058

JUDGE: Unassigned

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 11/30/2006

PETITION FOR A WRIT OF HABEAS CORPUS, PURSUANT TO
28 U.S.C. § 2241(c)(3)

COMES NOW, the instant Petitioner, Ken Anderson-Bey, pro-se, and hereby submits that pursuant to **Braden v. 30th Judicial Circuit Court of Kentucky**, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (whereby a D. C. Code Offender being housed in Federal Bureau of Prison custody, can, either file in the district of his confinement and/or in the U. S. District Court for the District of Columbia); **Faraday v. Commissioner of Correction**, 894 A.2d 1048 (Conn.App. 2006) ("Inmate filed a petition for a writ of habeas corpus, alleging that the conditions of his confinement were inhuman or dangerous because he was denied care for a back condition"); the instant Petitioner likewise alleges that the conditions of his confinement within USP-Lewisburg were [and still are] inhumane or dangerous because he is being denied the proper and necessary medical care for a back and/or leg condition. In support of, it is stated as follows:

1). The instant Petitioner alleges, inter alia, that a magnetic resonance imaging (MRI) scan of his back and right knee, and an operation to repair herniated dics in his back, et al. [is] medically

1.

RECEIVED
NOV 08 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

necessary, and that the respondent [Warden(s) (e.g., D. Scott Dodrill; Joseph V. Smith, and Troy Williamson) respectively have routinely and negligently denied his requests for the same.

2). Petitioner herein contends that the Respondent(s) failure to provide the Petitioner with the evaluative services of a neurologist or a neurosurgeon reflects deliberate indifference to Petitioner's serious medical needs.

### Petitioner's Eighth Amendment Claim and/or Fourteenth Amendment Claim

#### (a) Cruel and Unusual Punishment Inflicted

3). While the Constitution does not mandate comfortable prisons... but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrunity under the Eighth Amendment.

Petitioner, Kenneth Anderson, pro-se states that the evidence when viewed in light of this proceeding on his petition for a writ of habeas corpus, in which he alleges that the conditions of his instant confinement [are] inhumane or dangerous because he is still being denied necessary medical care for a back condition, et cetera, supports this Court's discretion to find that the Warden, Mr. Troy Williamson, USP-Lewisburg, [is] deliberately indifferent to Petitioner's condiction. Petitioner will present before this Court prima facie evidence that he suffers from a serious medical condition, and that the treatment thus far afforded to him has not alleviated his physical condition or the pain occasioned by it, and Warden, Mr. Troy Williamson, has repeatedly refused to provide Petitioner with the evaluative services of a neurologist or a neurosurgeon. See, **Medical Documentation, attached as Exhibit "A"**.

<u>Eighth Amendment Claim</u>

Petitioner asserts that the Eighth Amendment to the Federal Constitution of the United States, made applicable to the states by the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, **nor cruel and unusual punishment inflicted.**" Cruel and unusual punishment encompasses more than barbarous physical punishment .... It also includes punishments which involve the unnecessary and wanton infliction of pain ... and those which are grossly disproportionate to the severity of the crime....

The Eighth Amendment also imposes duties on these officials (i.e., USP-Lewisburg prison officials, et al.) who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and **medical care,** and must take reasonable measures to guarantee the safety of the inmates .... **Farmer v. Brennan**, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In **Estelle v. Gamble**, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) where the Court observed:

> "[T]he Eighth Amendment proscribes more than physically barbarous punishments.... The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency ... against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society ... or which involve the unnecessary and wanton infliction of pain...."

The **Estelle** Court further observed as follows:

> "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such

> a failure may actually produce physical torture
> or a lingering death ... the evils of most im-
> mediate concern to the drafters of the Amend-
> ment. In less serious cases, denial of medi-
> cal care may result in pain and suffering which
> no one suggests would serve any penological pur-
> pose .... The infliction of such unnecessary
> suffering is inconsistent with contemporary
> standards of decency as manifested in modern
> legislation codifying the common-law view that
> it is but just that the public be required to care
> for the prisoner, who cannot by reason of the
> deprivation of his liberty, care for himself."

(Citations omitted; internal quotation marks omitted.) **Id.**, at 102-104, 97 S.Ct. 285.

## Argument

**First**, by the BOP's USP-Lewisburg' requiring that the instant Petitioner resort to and exhaust his Administrative Remedy Procedure (e.g., from BP-8, BP-9, BP-10, and BP-11) this occasioned undue prejudice to Petitioner's subsequent assertion of a Civil Rights lawsuit pursuant to **Bivens v. Six Unknown Fed. Narcotics Agents**, 403 U.S. 388, 29 L.Ed.2d 619, 91 S.Ct. (1999); **McCarthy v. Madigan**, et al., 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Also see, Section 7 of the Civil Rights of Institutionalized Persons Act, codified at 42 U.S.C. § 1997e. **Second,** an Administrative Remedy Procedure as aforementioned may have been inadequate because of some doubt as to whether or not the agency (i.e., USP-Lewisburg's Medical Department/United States Public Health Service) was even empowered to grant effective relief simply because USP-Lewisburg's medical staff personnel, including physicians' assistants, nurses, and even staff physicians' lacked institutional and/or medical competence to resolve the particular types of serious medical issues presented under the constitutional limitations and/or statutory limitations in which they were compelled by BOP regulations and

policy to operate under, et cetera. **Third,** an Administrative Remedy Procedure may be inadequate where the administrative bod[ies] (i.e., Federal Bureau of Prisons, and its employees Warden Williamson, Regional Director Dodrill, or Administrator Watts) are not even health workers in the first place; although Petitioner concedes that J. Hemphill, USP-Lewisburg's Health Services Administrator and likewise a member of the United States Public Health Service is; have historically been shown to be biased or have otherwise predetermined the serious medical needs and/or issues of Petitioner/Plaintiff, Kenneth Anderson before them, in comity of interests. Nevertheless, as a factual matter, J. Hemphill, as USP-Lewisburg's Health Services Administrator, and likewise his being a member of the United States Public Health Service (USPHS) absolutely failed in his humane duties and responsibilities to perform any medically related functions pursuant to the Petitioner's serious medical needs, through conscious advoidance, while acting within the scope of his office and/or employment.

Petitioner herein seeking habeas corpus relief on the basis of his present conditions of confinement, which specifically includes the 'conservative' medical care made available to him, bears the burden of establishing both aspects of his instant claim: first, the alleged deprivation of adequate conditions must be objectively, sufficiently serious such that the instant Petitioner was denied the minimal civilized measure of life's necessities, and second, the USP-Lewisburg's prison officials and/or J. Hemphill, Health Services Administrator, a United States Public Health Service member, involved must have had a sufficiently culpable state of mind described as deliberate indifference to Petitioner's health or safety.

Without question, Petitioner has under his claim of an Eighth Amendment violation on the basis of inadequate medical care has demonstrated the objective aspect of his claim, specifically that a serious medical condition exists that requires medical care. In the instant Petitioner's case the Petitioner has made the threshold showing of serious illness or injury; and Petitioner has met this standard by demonstrating there is a condition of urgency, one that may produce death, **degeneration, or extreme pain.**

### Standard of Analysis

For purposes of this application for a writ of habeas corpus by the Petitioner seeking relief under the Eighth Amendment on the basis of inadequate medical care, factors deemed relevant when this Court is assessing the medical condition include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects the Petitioner's daily activities, or the undisputed existence of **chronic** and **substantial pain.** Herein, and in his attached medical records the instant Petitioner has shown evidence that demonstrates that he suffers from disc disease that [is] degenerative in nature and causes him significant pain.

**WHEREFORE,** since this Court now has before it evidence that Petitioner suffers from a serious medical condition, treatment afforded to Petitioner has not alleviated his physical condition or the pain occasioned by it, and Warden Williamson/J. Hemphill have repeatedly refused to provide Petitioner with the evaluative services of a neurologist or a neurosurgeon, the Eighth Amendment is implicated. Therefore Petitioner prays for the relief requested, and/or whatever further relief this Court deems necessary and just.

Finally, as a matter of law, the alleged acts or omissions by USP-Lewisburg and/or BOP prison officials [including J. Hemphill, a member of the United States Public Health Services] were Eighth Amendment violations under both statutory law and constitutional law; regardless of their [dis]puted factually requisite mental state because the conservatively negligent and highly unsuccessful "bare bones medical treatment and/or medical malpractice, in fact, was a direct result of their actions and/or failure to act, while each was personally involved in the events or occurrences preperTrated by their immediate subordinates, et al. It should also be noted by this Court that USP-Lewisburg's former Warden, Joseph V. Smith, personally lied in a letter to Congresswoman Eleanor Holmes Norton, stating that, "Petitioner was, in fact, receiving the necessary and proper medical treatment, et cetera." Likewise, former Warden, Joseph V. Smith, committed/perpretrated a fraud upon the Court, pursuant to **Hazel-Atlas** when responding to a previous petition by alleging the same as above.1/

Dated: September 25, 2006

                        Respectfully submitted,

                        **KENNETH ANDERSON, PRO SE**
                        Reg. No. 01924-016
                        **USP-Lewisburg**
                        P. O. Box 1000
                        **LEWISBURG, PA 17837**

---

1/ See, **Hazel-Atlas Glass Co. v. Hartford-Empire Co.**, 322 U.S. 238, 88 L.Ed. 1250, 64 S.Ct. 997 (1944) (as cited in 19 ALR Fed. 761 - Construction and application of provision of Rule 60(b) of Federal Rules of Civil Procedure that Rule does not limit power of Federal District Court to set aside judgment for "fraud upon the court").

# CERTIFICATE OF SERVICE

I, <u>Kenneth Anderson, pro-se</u>, hereby certify that I have served a true and correct copy of the foregoing:

Petition For A Writ of Habeas Corpus

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, <u>Houston vs. Lack</u>, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

United States Attorney's Office
For the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20001
[Attn: Special Proceedings Section]

Superior Court of the
District of Columbia
500 Indiana Avenue, N.W.
Washington, D.C. 20001

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this <u>25th</u> day of <u>September</u>, 2006

Respectfully Submitted,

<u>KENNETH ANDERSON, PRO SE</u>

REG. NO. <u>01924-016</u>

U.S. MEDICAL CENTER FOR FEDERAL PRISONERS
SPRINGFIELD, MISSOURI

HISTORY AND PHYSICAL

ANDERSON, Ken
Reg. No. 01924-016
September 29, 2003
WARD: S03

## HISTORY - PART I

CHIEF COMPLAINT: 49-year-old male that came to the United States Medical Center for Federal Prisoners (USMCFP), Springfield, Missouri, from the United States Penitentiary (USP), Lewisburg, Pennsylvania, for repair of torn left knee meniscus and also ACL reconstruction.

HISTORY OF PRESENT ILLNESS: This patient reported that for the past two years he has been having increasing pain in his left knee, and also his knee appears to give out every time he goes up or down stairs. He had a history of gunshot wound to the left knee 25 years ago.

## HISTORY - PART II

OCCUPATION/EMPLOYMENT: None.

MILITARY HISTORY AND FOREIGN TRAVEL: Denies.

HABITS:  Alcohol: On occasion.
Tobacco: He quit about a year ago. He used to smoke about a pack a day.
Drugs: Admitted IV drug abuse. The last time was in 1996.

FAMILY HISTORY: Patient has been incarcerated for a long time. Unknown family status.

CHILDHOOD ILLNESSES: Recalls only chicken pox.

ADULT ILLNESSES: Hepatitis C and hepatitis B.

SURGERIES: Denies.

INJURIES: Gunshot wound to the left knee 25 years ago.

DRUG SENSITIVITIES AND ALLERGIES: No known allergies.

06 2058

FILED

NOV 3 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Antonio J. Alburquerque, Physician Assistant

ANDERSON, Ken

September 29, 2003

Reg. No. 01924-016

SENSITIVE - LIMITED OFFICIAL USE

Anderson, Kenneth                                                                   6/18/04   9:19 am   2



## Nerve Conduction Report:

### Motor Nerves

| Nerve | Site | Onset Lat (ms) | Norm Onset | Amplitude | Norm Amp | Area (mVms) | Duration (ms) | Seg Name | Delta (ms) | Distance (cm) | Velocity (m/s) | Norm Vel |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L Peroneal | EDB Ankle B Fib | 4.69 12.05 | <6.0 | O-P (mV) 2.09 1.72 | >2.5 | Neg 4.574 3.919 | Neg 4.41 4.41 | B Fib-Ankle | 0 7.36 | 35.00 | 47.6 | >40.0 |
| L PostTib | AbdHal Ankle Knee | 4.50 13.41 | <6.0 | O-P (mV) 3.48 3.01 | >3MV >2MV | Neg 11.935 11.258 | Neg 6.23 8.02 | Knee-Ankle | 0 8.91 | 43.00 | 48.3 | >40.0 |
| R PostTib | AbdHal Ankle Knee | 5.86 15.14 | <6.0 | O-P (mV) 6.28 3.91 | >3MV >2MV | Neg 14.114 10.322 | Neg 4.03 6.75 | Knee-Ankle | 0 9.28 | 44.00 | 47.4 | >40.0 |

### Sensory Nerves

| Nerve | Site | Onset Lat (ms) | Norm Onset | Amplitude | Norm Amp | Area (mVms) | Duration (ms) | Seg Name | Delta (ms) | Distance (cm) | Velocity (m/s) | Norm Vel |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L Sural | LatMal 12 cm | 2.28 | <3.0 | O-P (μV) 11.84 | >10uV | Neg 0.014 | Neg 2.70 | 12 cm-LatMal | 0 2.28 | 12.00 | 52.6 | >40.0 |

## F/H Report:

| Nerve | Muscle | Lat1 (ms) | Lat2 (ms) | Lat2 - Lat1 (ms) | Amplitude (μV) |
|---|---|---|---|---|---|
| L Peroneal F | ExtDigit8r | 56.56 | 53.44 | 3.13 | |
| L PostTib F | AbdHal8r | 56.72 | 52.81 | 3.91 | |
| R PostTib F | AbdHal8r | 56.56 | 57.66 | 1.09 | |

## EMG Report:

| Side | Muscle | Nerve | Root | INS | FIBS | PSW | AMP | DUR | Phases | Recruit | InPattern | Comment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L | AdductorLong | Obturat | L2-4 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | AntTibialis | Dp Peron | L4-5 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | ExtHalLong | Dp Peron | L5 S1 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | GluteusMax | InfGlut | L5-S2 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |

| Side | Muscle | Nerve | Root | INS | FIBS | PSW | AMP | DUR | Phases | Recruit | InPattern | Comment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L | GluteusMed | SupGlut | L4-S1 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | MedGastroc | Tibial | S1-2 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | PeroneusLong | SupPeron | L5-S1 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | PostTibialis | Tibial | L5-S1 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | Semimembran | Tibial | L5-S1 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | Soleus | Tibial | L5-S2 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | TensorFasLat | SupGlut | L4-5 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | VastusLat | Femoral | L2-4 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |
| L | VastusMed | Femoral | L2-4 | Nml | Nml | Nml | Nml | Nml | Nml | Nml | Nml | |

**SUMMARY OF FINDINGS:**

Patients legs were warm to touch. NCV studies of the lower extremities shows a normal motor distal latencies for the R&L motor nerves at the ankles. In addition the L sural sensory components are normal with no amplitude attenuation. All other parameters tested are normal including the F-wave latencies.

Needle examination of the muscles of the L lower extremity shows normal motor units with normal polyphasia and recruitment in all lower extremity muscles tested. There is no active denervation at rest.

**IMPRESSION:**

Electrophysiologic Evaluation of the Lower Extremities Suggests:

1. Findings are Within Normal Limits.


Thank you very much for this kind referral!

John G Eddy PT, ECS
Board Certified Electrophysiologic Clinical Specialist

| MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE |
|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION (Sign each entry) |
| 4-16-2004 0908 | S. The patient returns to pick up a knee brace today. He complains of continued pain and swelling of the left knee. He is S/P arthroscopy with meniscectomy and loose body removal, removal of spurs in the left knee, October 2003. He states he was unable to do much of the physical therapy at Springfield secondary to pain and swelling. He states he has not been doing any rehab exercises here at USP Lewisburg because his "balance ain't no good". He also complains of low back pain and states he was told that his knee problems were the result of a back problem. He states he wants back surgery to fix his back so he can walk again.<br><br>O. 50 year old black male, NAD, antalgic gait<br><br>Left knee- thigh circumference 20 ½, right thigh- 21 ½. 1+ effusion, no deformity or crepitus. Drawer, Mcmurray tests are negative. No joint line tenderness. No excessive laxity of joint with varus/valgus stress. Squats performed well.<br><br>Back<br><br>Has difficulty with toe and heel walking on the left. Decrease strength and sensation to pinprick on the left extremity. DTR's 1+ bilaterally. SLR's performed well bilaterally.<br><br>A. S/P arthroscopy left knee, |

USP LEWISBURG
HEALTH SERVICES UNIT
LEWISBURG, PA 17837

Anderson, Kenneth

CHRONOLOGICAL RECORD OF MEDICAL CARE
Lewisburg, PA 17837  Medical Record
STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

D7924-016

MCFP SPRINGFIELD.        MEDICATION SUMMARY                  15:36
/23/2004                 THRU  ZZZ
MCFP - SPRINGFIELD              SPRINGFIELD, MO

DERSON, KEN, 01924-016, SPG, V02-062L

tive Prescriptions

ACETAMINOPHEN/CODEINE 300/30 MG TAB
T 1-2T BY MOUTH FOUR TIMES DAILY AS NEEDED **PILL LINE **
Dr: HARE DO
ORDERED: 12/31/2003   EXP: 01/29/2004          0.0 TAB in 23 day(s)
RENEWED:              EXP: 01/29/2004          0.0 / 24 hours

PIROXICAM 20 MG CAP
TAKE ONE CAPSULE BY MOUTH EACH DAY AS NEEDED FOR 30 DAYS
Dr: ALBURQUERQUE PA
ORDERED: 10/20/2003   EXP: 02/09/2004          30.0 CAP in 95 day(s)
RENEWED: 11/12/2003   EXP: 02/09/2004          0.3 / 24 hours

CAPSAICIN CREAM 60GM 0.025% CRM
APPLY TO LEFT FOR LEG THREE TIMES DAILY AS NEEDED FOR 30 DAYS
Dr: ALBURQUERQUE PA
ORDERED: 10/20/2003   EXP: 02/09/2004          540.0 CRM in 95 day(s)
RENEWED: 11/12/2003   EXP: 02/09/2004          5.7 / 24 hours

FAXED
DATE: 1-26-04  INIT: B

Trf Lew via
bus 1-28-04

## Multi-Diagnostic Services, Inc.

139-16 91st Avenue, Jamaica, NY 11435 ~Telephone (718) 454-8556
Fax (718) 454-7950 ~ Email: multidiag1@aol.com

Interpreted for Multi-Diagnostic Services, Inc. by **Mark Armstrong, M.D.**
P.O. Box 555, Old Greenwich, CT 06870

Name: Anderson, Ken

DIN: 01924-016

Facility: Lewisburg Federal Penitentiary

DOB: 08/12/1954

Date of Study: 02/01/2006

Date of Report: 02/05/2006

EXAM: MRI-LUMBAR SPINE

Sagittal and axial T1 and T2 weighted images of the lumbar spine were performed.

There is mild diffuse loss of disc signal throughout the lumbar levels. The discs are normal in height. The vertebrae are normal in height. There is a small focus of edema along the anterosuperior endplate of L3 that is probably degenerative. There is no compression fracture. There is no spondylolisthesis. The spinal canals are unremarkable.

The axial images demonstrate a minimal bulge at L2-L3 that impinges upon the epidural fat and upon the inferior aspects of the neural foramina. At L4-L5, there is a disc bulge impinging upon the epidural fat and lateral recesses. The paraspinal tissues are unremarkable.

**IMPRESSION:**
Bulges at L2-L3 and L4-L5. Other findings as described.

Sincerely,

**Mark Armstrong, M.D.**
MA/mrs

USP Lewisburg
Health Services Unit
Lewisburg, PA 17837

02/13/2006

Anderson, Ken
01924-016

2/14/06 He is being evaluated for his low back. He states that he has had pain which has been progressive over the last 2 years. He recently had MRI scans as well as an EMG.

**PAST MEDICAL HISTORY:** Positive for hepatitis C.

**EXAMINATION** revealed that he was ambulating with a cane. He had a limp with ambulation. He had some tenderness in the lower lumbar region. There was some mild tenderness in the left sciatic distribution. Straight leg raising of the right leg was excellent. Straight leg raising of the left leg was slightly decreased. He had good sensation distally.

**STUDIES:** I did review an MRI scan which showed a bulging disk at L2-3 and L4-5 levels. EMG test was noted to be completely normal.

**IMPRESSION:** 1. Bulging disk, L2-3 and L4-5.

**PLAN:** The patient at this point is going to be started on prednisone 5 mg daily for 30 days. I did mention to him that if this does not provide any significant relief, I would then recommend an epidural steroid injection at the L2-3 and L4-5 levels. I will see how he makes out with the prednisone in the interim.

David J. Ball, D.O.
DJB/lag

B. Becker, M.D.
USP Lewisburg

3/22/06

CC: Lewisburg Penitentiary

*Chart Missing*

| MEDICAL RECORDS | CONSULTATION SHEET | |
|---|---|---|
| TO: ORTHO (IN) | FROM: (Requesting Clinician/Physician) Doctor Bussanich / BUSSANICH | DATE OF REQUEST 11.09.2005 |

**Chief Complaint:** Persistent back pain nonresponsive to conservative measures. MRI pending

**History of Present Illness:**
**Significant Diagnostic Studies Done:**
**Summary of Prior Treatment for Present Condition:**
**Effect condition has on Patient's Ability to Function in Correctional Environment:**
**Current Medications:**
**Drug Allergies:**
**Other Significant Medical Condition:**
**Primary Impression/Procedure Requested at this Time:** PROBABLE HNP / For evaluation  Feb 2006

| DOCTOR'S SIGNATURE: Bussanich MD  ANTHONY BUSSANICH, MD | APPROVAL DATE | TO BE SEEN NO LATER THAN: NOV/2005  Dec 2005  priority |
|---|---|---|

## CONSULTANT SECTION

**SIGNIFICANT FINDINGS:**  after MRI

**DIAGNOSIS:**

**TREATMENT:** (Whenever possible, provide recommendation which permit continued care of the inmate within the institution setting, and, if possible, by institution Staff.)

**Follow Up #1:** (Whenever possible, provide recommendation which permit continued care of the inmate within the institution setting, and, if possible, by institution Staff.)

1) Begin Prednisone 5mg/d × 30 days
2) Rec Epidural Injection @ L2-3/L4-5 IV Life if Prednisone does not give relief

Bussanich MD  02.17.2006

| SIGNATURE AND TITLE OF PROVIDER | DATE 2/14 |
|---|---|
| DATE OF INCARCERATION | USP LEWISBURG, PA 17837 | CUSTODY LEVEL: |

**PATIENT'S IDENTIFICATION:**     **CONSULTATION SHEET**
STANDARD FORM 513 (Rev 3/99)

ANDERSON, KEN
01924-016



| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT  TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 2-15-2006<br>1055 | ADMIN NOTE: SEEN BY DR. BALL IN ORTHO CLINIC YESTERDAY. DX- MRI RESULTS REVIEWED. MINIMAL BULGING OF DISKS AT L-2-3, L-4-5.<br>RX- SURGERY NOT INDICATED AT THIS TIME.<br>RX- PREDNISONE 5 MG ONE TABLET PER DAY X 30 DAYS, THEN ONE TABLET EVERY OTHER DAY X 3 DOSES, THEN ½ TABLET EVERY OTHER DAY X 2 DOSES, THEN D/C.<br>THE PATIENT IS INSTRUCTED TO F/U WITH HIS PCP, IF THE PREDNISONE DOES NOT PROVIDE RELIEF. HE THEN SHOULD BE REFERRED TO ANESTHESIOLOGY FOR EPIDURAL INJECTIONS AT L 2-3, L 4-5.<br><br>Anthony Bussanich, M.D.       William A. Bogler, PA-C<br>                              Physician Assistant<br>02-17-2006 |
| 3/15/06<br>0400 | S: Refill of Medication/s for LBP<br>O: Stable, Vital signs: BP: ____ PR: ____<br>A: LBP<br>P: Refill of the following medications (See below) Pt. Educ to follow previous instructions.<br>(1) Capsaicin cream   medicated  ung  015  #1<br>                                              Ref x 1<br>                                    Ivan Navarro, PA<br>                                    USP Lewisburg<br><br>USP Lewisburg<br>Lewisburg, PA 17837 |

STANDARD FORM 600 (REV. 6-97) BACK

U.S. Department of Justice

Federal Bureau of Prisons

U.S. Penitentiary

Lewisburg, PA 17837

July 30, 2004

The Honorable Eleanor Holmes Norton
United States Congresswoman
529 14th Street NW
Suite 900
Washington, DC 20045-1928

Attn: Aaron Ward

RE:  ANDERSON, Kenneth
     Reg. No. 01924-016

Dear Congresswoman Norton:

We are in receipt of your correspondence dated July 10, 2004, submitted to Harley G. Lappin, Director, Federal Bureau of Prisons, Washington, DC regarding inmate Kenneth Anderson, an inmate currently confined at the United States Penitentiary, Lewisburg, Pennsylvania. Director Lappin has forwarded your correspondence to me for a response.

A review of inmate Anderson's medical record revealed he had left knee surgery, performed at the United States Medical Center, Springfield, Missouri, on October 27, 2004. The inmate went through the operation without complications and was returned to USP Lewisburg, where he is being monitored by our medical staff. Inmate Anderson is seen in our chronic care clinic every three months by a physician and as needed by our physician assistants. He alleges that he needs back surgery; however, at this time, back surgery is not warranted. Diagnostic studies have been performed and he has been enrolled in a physical therapy program for both his knee and back. We will continue to monitor and treat inmate Anderson as medically necessary.

I trust I have been responsive to your concern. If I can be of further assistance, please do not hesitate to contact me.

Sincerely,

Joseph V. Smith
Warden